UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERTA AGYEMAN, et al.,

Plaintiffs,

v.

PAMELA J. BONDI, et al.,

Defendants.

Civil Action No.  25-529 (JDB)

## MEMORANDUM OPINION

After plaintiffs—154 family members or personal representatives of individuals murdered or injured in the September 11, 2001, terrorist attacks—obtained a default judgment against the Islamic Republic of Iran, they sought compensation from the Victims of State Sponsored Terrorism ("VSST") Fund.  Upon review of plaintiffs' claims, the Special Master of the Fund determined plaintiffs were ineligible for payment, denied their claims, and affirmed the denial after a review hearing.  Now plaintiffs ask this Court to review the Special Master's determination, arguing that it turned on a misinterpretation of the VSST Fund statute.  But that statute makes clear that the Special Master's decisions are "not subject to . . . judicial review."  34 U.S.C. § 20144(b)(3)(B).  Accordingly, this Court lacks subject-matter jurisdiction over plaintiffs' claims and will grant defendants' motion to dismiss.

## BACKGROUND

### I.    The VSST Fund

"Unable to undo the human toll of [terrorist] attacks," Congress in 2015 created the VSST Fund "to provide victims with monetary compensation."  Braun v. United States, 31 F.4th 793, 794 (D.C. Cir. 2022); see Pub. L. No. 114-113, 129 Stat. 2242, 3007 (2015) (codified as amended

at 34 U.S.C. § 20144).  As relevant here, claimants are eligible for compensation from the Fund if they have been awarded a judgment against "a foreign state that was designated as a state sponsor of terrorism at the time" of the relevant attack and that attack "ar[ose] from acts of international terrorism, for which the foreign state was determined not to be immune from the jurisdiction of the courts of the United States under" 28 U.S.C. § 1605A or § 1605(a)(7).[1]  See 34 U.S.C. § 20144(c)(2)(A).

The task of determining whether a claimant is eligible for compensation is assigned to the Fund's Special Master, who is appointed by the Attorney General.  Id. § 20144(b), (c)(1); see also id. § 20144(d)(1) ("The Special Master shall order payment from the Fund for each eligible claim . . . .").  The Special Master reviews each claim and must provide a written decision to the Attorney General and each claimant.  Id. § 20144(b)(3)(A).  That decision is typically conclusive; the Special Master's decisions "with regard to compensation from the Fund" are "final and . . . not subject to administrative or judicial review."  Id. § 20144(b)(3)(B).  The only exception is if the claimant requests a review hearing before the Special Master.  Id. § 20144(b)(3)(B), (b)(4). Following such a hearing, the Special Master must "issue a final written decision affirming or amending the original decision."  Id. § 20144(b)(4)(B).  But that is the true end of the road: "The written decision is final and nonreviewable."  Id.

## II.     Underlying Claims

Following the tragedies of September 11, 2001, many victims, their families, and their representatives sued various foreign entities and nations for allegedly supporting Osama bin Laden and al Qaeda, and the claims were funneled into a multi-district litigation.  See In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 109, 111 (2d Cir. 2013).  To sue foreign nations (who are

---

[1] Because 28 U.S.C. § 1605(a)(7) is no longer in effect, judgments qualify if they were issued under the section "as . . . [it] was in effect on January 27, 2008." 34 U.S.C. § 20144(c)(2)(A)(ii).

generally immune from suit), the plaintiffs relied primarily on 28 U.S.C. § 1605A, which grants United States courts jurisdiction over claims seeking money damages against state sponsors of terrorism for their support of certain acts of terrorism. 28 U.S.C. § 1605A(a)(1). The 154 plaintiffs here, however, could not take advantage of §1605A. Neither they nor their loved ones were United States citizens on September 11, 2001, Compl. [ECF No. 1]] ¶ 180, and § 1605A only waives sovereign immunity in suits in which "the claimant or the victim" was a citizen at the time of the terrorist attack in question, 28 U.S.C. § 1605A(a)(2)(A)(ii)(I).[2]

In 2016, Congress enacted § 1605B to fill in the gap that § 1605A left. Similarly to § 1605A, § 1605B grants United States courts jurisdiction over claims against foreign states that seek money damages for the state's involvement in international terrorist attacks. 28 U.S.C. § 1605B(a), (b). But unlike § 1605A, § 1605B does not require either the victim or the claimant to have been a citizen of the United States at the time of the attack.

In light of the new grant of jurisdiction, the plaintiffs sued Iran. Compl. ¶ 183. Their claims were consolidated into the multi-district litigation, id., and in mid-2024, the district court issued § 1605B judgments in favor of each plaintiff, id. ¶ 187.

### III.    VSST Fund Claims

On the basis of those judgments, plaintiffs applied for payment out of the VSST Fund. Id. ¶ 192. The Special Master preliminarily denied each plaintiff's claim because their judgments were granted pursuant to § 1605B, not § 1605A. Id. ¶ 193; Notice of Decision [ECF No. 1-1] at 1; see 34 U.S.C. § 20144(c)(2)(A)(ii). Plaintiffs then requested a consolidated hearing "to address the eligibility denials that negatively and systematically impacted an entire class of VSST Fund

---

[2] 28 U.S.C. § 1605A's waiver also extends to claims in which the claimant was a member of the United States armed forces or a government employee or contractor at the time of the attack, but here neither plaintiffs nor their loved ones were either. The previously in effect 28 U.S.C. § 1605(a)(7) largely mirrored the current version of 28 U.S.C. § 1605A, including its citizenship requirement. See 28 U.S.C. § 1605(a)(7) (2006).

claimants." Compl. ¶ 194 (internal quotation marks omitted). The Special Master granted plaintiffs' request and held a hearing, id. ¶ 195, but on December 2, 2024, issued a final decision denying their claims, once again concluding that they were ineligible for payment from the Fund because their judgments were issued under § 1605B, Compl. ¶ 199; see Special Master's Final Decision [ECF No. 1-6] ("Final Decision").

## IV.    Procedural History

About three months after the Special Master's final decision, plaintiffs filed this suit against the Attorney General and the Special Master. Plaintiffs seek review of the Special Master's decision under the Administrative Procedure Act ("APA"), arguing again that the Special Master erred in reading 34 U.S.C. § 20144 to exclude from eligibility individuals who obtain judgments under 28 U.S.C. § 1605B. See Compl. ¶¶ 205–10; 5 U.S.C. § 706.[3] Defendants move to dismiss the complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Mem. Supp. Defs.' Mot. Dismiss [ECF No. 15-1] ("Mot."); Mem. Opp'n Mot. Dismiss [ECF No. 20] ("Opp'n"); Reply Br. Supp. Defs.' Mot. Dismiss [ECF No. 21] ("Reply").

## **DISCUSSION**

Defendants argue that this Court lacks subject matter jurisdiction because 34 U.S.C. § 20144(b) precludes judicial review of decisions of the Special Master. The Court agrees.[4]

---

[3] Plaintiffs' complaint also asserts a standalone claim under 34 U.S.C. § 20144. See Compl. ¶¶ 201–04. However, in their opposition, plaintiffs do not contest defendants' motion to dismiss that claim. See Mem. Opp'n Mot. Dismiss [ECF No. 20] ("Opp'n") at 11–33 (arguing only that this Court has jurisdiction under the APA and the Mandamus Act). The Court thus grants defendants' motion to dismiss that claim as conceded, see, e.g., Hoffman v. District of Columbia, 681 F. Supp. 2d 86, 88 (D.D.C. 2010), while also noting that the Court would lack jurisdiction over the claim for the same reasons it lacks jurisdiction over plaintiffs' APA claim, see Galvin v. Del Toro, 586 F. Supp. 3d 1, 9–10 (D.D.C. 2022) (explaining that a statute precludes judicial review within the meaning of 5 U.S.C. § 701(a)(1) "if it forbids any judicial review" (emphasis omitted)), and that 34 U.S.C. § 20144 provides no cause of action regardless.

[4] In the alternative, defendants argue that this Court lacks jurisdiction because plaintiffs lack constitutional standing. See Mot. at 8. Article III requires that a plaintiff have an injury in fact, caused by the challenged conduct, and redressable by the relief requested. Campaign Legal Ctr. & Democracy 21 v. FEC, 952 F.3d 352, 356 (D.C. Cir.

The APA itself does not grant district courts jurisdiction.  <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977).  Rather, "jurisdiction over APA challenges to federal agency action is vested in district courts" by way of the federal-question statute, 28 U.S.C. § 1331.  <u>Robbins v. Reagan</u>, 780 F.2d 37, 42 (D.C. Cir. 1985) (citing <u>Califano</u>, 430 U.S. at 105, 109).  But § 1331's grant of jurisdiction does not apply where a statute "specifically bars judicial review in the district court." <u>Robbins</u>, 780 F.2d at 42; <u>Califano</u>, 430 U.S. at 105 (Section 1331 "confer[s] jurisdiction on federal courts to review agency action" "subject only to preclusion-of-review statutes"); <u>see</u> 5 U.S.C. § 701(a)(1) (the APA does not apply "to the extent that . . . statutes preclude judicial review").  Put simply, where a statute precludes judicial review, a court has no jurisdiction over an APA claim based on that statute.

Whether a statute precludes review is a matter of congressional intent.  <u>Koretoff v. Vilsack</u>, 614 F.3d 532, 536 (D.C. Cir. 2010).  As always, the clearest expression of that intent is a statute's express language.  <u>See</u> <u>Tex. All. for Home Care Servs. v. Sebelius</u>, 681 F.3d 402, 408–09 (D.C. Cir. 2012); <u>Janko v. Gates</u>, 741 F.3d 136, 139 (D.C. Cir. 2014) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." (citation modified)).  Hence, while a court faced with the question whether a statute precludes judicial review must keep in mind the "basic presumption of judicial

---

2020).  Defendants posit that plaintiffs' injuries—lack of compensation from the Fund—are not redressable because this Court lacks jurisdiction to review the Special Master's decisions and thus cannot grant them any relief at all.  <u>See</u> Mot. at 8.  While this Court ultimately agrees that it lacks jurisdiction, it disagrees that plaintiffs lack standing as a result.  The questions whether a plaintiff has standing and whether a statute precludes judicial review are distinct.  <u>See,</u> <u>e.g.</u>, <u>Glob. Health Council v. Trump</u>, No. 25-5097, 2025 WL 2480618, at *4–5, 9–11 (D.C. Cir. Aug. 28, 2025).  And for purposes of standing, a court assumes that a plaintiff will prevail on the merits of her claim.  <u>See,</u> <u>e.g.</u>, <u>NB ex rel. Peacock v. District of Columbia</u>, 682 F.3d 77, 82 (D.C. Cir. 2012).  Here, plaintiffs contend that the Court has jurisdiction to review their claims and that they are eligible for payment from the VSST Fund despite obtaining judgments under 5 U.S.C. § 1605B.  Assuming those contentions are true, an order by this Court declaring plaintiffs eligible and remanding to the agency would redress their asserted injuries, especially considering that the sole reason the Special Master gave for denying their claims was that their judgments came under § 1605B.  <u>See</u> Final Decision at 4.

review," <u>Banzhaf v. Smith</u>, 737 F.2d 1167, 1169 (D.C. Cir. 1984) (quoting <u>Abbott Lab'ys v. Gardner</u>, 387 U.S. 136, 140 (1967)), it must not mistake that assumption as license to ignore "specific and emphatic statutory language" that shows Congress intended to preclude review, <u>see Tex. All.</u>, 681 F.3d at 408–09; <u>Glob. Health Council v. Trump</u>, No. 25-5097, 2025 WL 2326021, at *10 (D.C. Cir. Aug. 13, 2025) ("There is a presumption favoring judicial review of administrative action but it is just that—a presumption." (internal quotation marks omitted)).[5]

Here, 34 U.S.C. § 20144 "unequivocally precludes review" of any decision by the Special Master. <u>See</u> <u>Tex. All.</u>, 681 F.3d at 409. Section 20144(b)(3)(B) provides that "[a]ll decisions made by the Special Master with regard to compensation from the Fund shall be . . . final and, except as provided in paragraph (4), not subject to administrative or judicial review." The only "except[ion] . . . provided in paragraph (4)" is that a claimant can request a hearing before the Special Master. <u>Id.</u> § 20144(b)(4)(A). But, as previously stated, once that hearing is held and the Special Master issues her written decision, it cannot be reconsidered by <u>anyone</u>: "The written decision is final and nonreviewable." <u>Id.</u> § 20144(b)(4)(B).

Plaintiffs' lawsuit falls squarely within this statutory language. Plaintiffs ask this Court to review the Special Master's denial of their claims and hold that it violated § 20144. <u>See, e.g.</u>, Compl. ¶¶ 5, 199, 202, 208, 210. Both the Special Master's preliminary denials and her final denial following the review hearing are undoubtedly "decisions." <u>See</u> <u>Decision</u>, Black's Law Dictionary (10th ed. 2015) ("A judicial or agency determination after consideration of the facts and the law."). And both decisions were "with regard to compensation from the Fund." The preliminary denials and the final decision directly "concern[ed]" whether plaintiffs were permitted

---

[5] Statutes that do not explicitly preclude judicial review may still do so implicitly. <u>See, e.g.</u>, <u>Block v. Cmty. Nutrition Inst.</u>, 467 U.S. 340, 345–49 (1984). But that is not the case here.

to receive VSST Fund payments.  See Merriam-Webster's Dictionary & Thesaurus 695 (2014) (defining regarding as "about, apropos of, concerning . . . respecting"); Lamar, Archer & Cofrin, LLP v. Appling, 584 U.S. 709, 717 (2018) ("regard means to have relation to or bearing upon: relate to" (internal quotation marks omitted)); Notice of Decision at 1 ("Based on all the information submitted for your claim, you are not eligible for compensation from the USVSST Fund."); Final Decision at 4 ("Accordingly, after considering all of the factual, legal, and policy arguments . . . and all of the information before me regarding these 154 claims, I am affirming the denial of the claims.").  That plaintiffs seek review of a decision with regard to compensation from the Fund is ever more apparent when one considers the relief they seek: declarations that the Special Master's "decision denying eligibility to Plaintiffs to the VSST Fund is in violation of" § 20144 and that "Plaintiffs are eligible to participate in the VSST Fund," and a remand to the Special Master for reconsideration of plaintiffs' claims in accordance with those declarations. Compl. at 69–70; see O'Neill v. Garland, Civ. A. No. 21-1288 (JEB), 2022 WL 17415057, at *5 (D.D.C. Dec. 5, 2022) (determining that § 20144(b) precluded review where requested relief revealed that claim "boil[ed] down to a dispute over the appropriate amount of compensation from the Fund").  Accordingly, § 20144(b) bars judicial review of plaintiffs' claims.

In resisting this plain-text reading, plaintiffs do not deny that § 20144(b) precludes judicial review of some of the Special Master's decisions.  Instead, they argue that the statute only precludes review of the Special Master's factual determinations.  See Opp'n at 13–18.  Because plaintiffs contest only the Special Master's legal conclusion that § 20144 does not permit VSST Fund payments to individuals who obtain judgments under 28 U.S.C. § 1605B, plaintiffs assert that § 20144(b) does not bar judicial review here.

To support this argument, plaintiffs point to <u>Lindahl v. Office of Personnel Management</u>, 470 U.S. 768 (1985).  There, the Supreme Court addressed whether 5 U.S.C. § 8347(c) precludes review of all disability decisions by the Office of Personnel Management ("OPM").  <u>See</u> <u>Lindahl</u>, 470 U.S. at 771.  In relevant part, § 8347(c) states that OPM "shall determine questions of disability and dependency" and "the decisions of the Office concerning these matters are final and conclusive and are not subject to review."  The Supreme Court explained that "while § 8347(c) plausibly can be read as imposing an absolute bar to judicial review, it also quite naturally can be read as precluding review only of OPM's factual determinations about 'questions of disability and dependency.'"  <u>Lindhal</u>, 470 U.S. at 779 (internal quotation omitted).  Because the text could be read to permit review of legal questions, the Court determined that the presumption of judicial review favored adopting the more permissive interpretation.  <u>See id.</u> at 779–80.

The problem for plaintiffs is that 34 U.S.C. § 20144(b) contains no similar ambiguity.  It does not state that the Special Master's decisions "concerning" <u>certain</u> "matters are final and . . . not subject to review."  <u>See</u> 5 U.S.C. § 8347(c).  Instead, it states that "[a]ll decisions made by the Special Master with regard to compensation from the Fund" and "[t]he decision[s]" following a review hearing are unreviewable, <u>id.</u> §§ 20144(b)(3), (4) (emphasis added).  Unqualified, the word decision includes determinations about "the facts <u>and</u> the law."  <u>Decision</u>, Black's Law Dictionary, <u>supra</u> (emphasis added); <u>Hekmati v. United States</u>, 51 F.4th 1066, 1070 (Fed. Cir. 2022) (holding that § 20144(b)(4) precluded review of claim in which plaintiff asserted Special Master's decision "violate[d] the terms of" § 20144); <u>cf.</u> <u>Patel v. Garland</u>, 596 U.S. 328, 338 (2022) ("any" in the context of a jurisdiction-stripping provision "means that the provision applies to judgments 'of whatever kind'"); <u>Salinas v. U.S. R.R. Ret. Bd.</u>, 592 U.S. 188, 193–96 (2021) (holding that statute that states that "any final decision of the Board" is reviewable permits review

of all, not just a subset, of decisions).  In fact, <u>Lindahl</u> distinguished this sort of "unambiguous and comprehensive" language from the ambiguous language of 5 U.S.C. § 8347(c).  <u>See</u> 470 U.S. at 780 & n.13 (citing 38 U.S.C. § 211(a), which states that "the decisions of the Administrator on any question of law or fact . . . shall be final," as an example of language that clearly precludes all review).  The presumption of judicial review, no matter how strong, cannot change the meaning of unambiguous text.  <u>See</u> <u>Tex. All.</u>, 681 F.3d at 408–09; <u>Make The Rd. N.Y. v. Wolf</u>, 962 F.3d 612, 624 (D.C. Cir. 2020) ("Foundational tenets of statutory construction likewise apply with equal force in the jurisdictional context.").[6]

Similarly, plaintiffs cannot avoid § 20144(b)'s explicit bar on judicial review by framing their lawsuit as a "broad programmatic legal challenge[]" as opposed to a challenge by an individual claimant.  <u>See</u> Opp'n at 3.  Section 20144(b)(3)'s language—that "[a]ll decisions" of the Special Master are unreviewable—bars review of claims brought by multiple claimants as plainly as it bars review of claims brought by just one.  <u>See</u> <u>O'Neill</u>, 2022 WL 17415057, at *4–5.  Section 20144(b)(4), in turn, bars review of any post-hearing written decision of the Special Master.  Here, that written decision addressed all 154 plaintiffs' claims, <u>see</u> Final Decision at 1, meaning that the decision is unreviewable whether it is challenged by one or all of them. Regardless, the fact that plaintiffs ask this Court to determine that § 20144 permits payment to individuals who obtain judgments under 5 U.S.C. § 1605B and to remand to the Special Master for reconsideration of each claim reveals that they seek review of the individual decisions about compensation from the Fund.  <u>See</u> <u>O'Neill</u>, 2022 WL 17415057, at *5–6 ("[W]hen the text of a

---

[6] Plaintiffs also argue that <u>Make the Road New York</u> supports their argument that only factual determinations are unreviewable.  But the statute at issue there was not simply ambiguous, but specifically provided that certain decisions were subject to judicial review.  <u>Make The Rd. N.Y.</u>, 962 F.3d at 625–26.  By contrast, § 20144(b) clearly states that no decision is subject to judicial review.  34 U.S.C. § 20144(b)(3), (4).  The only exception to that mandate is when a claimant seeks an <u>administrative</u> review hearing.  <u>Id.</u>  Moreover, the inclusion of one exception implies no other exception exists.  <u>See</u> <u>Chevron USA Inc. v. Echazabal</u>, 536 U.S. 73, 80 (2002).

statute precludes judicial review, the Court must look beyond plaintiffs' characterization of their challenge and view their claim through the perspective of the relief sought."); Heckler v. Ringer, 466 U.S. 602, 614 (1984). As Chief Judge Boasberg has explained, "[t]o allow Plaintiffs to evade" 34 U.S.C. § 20144(b)'s "bar on judicial review merely by bringing their claims together and characterizing their challenge as programmatic would risk undoing the administrative-review process Congress designed." O'Neill, 2022 WL 17415057, at *6.[7]

Plaintiffs seek review of the Special Master's decision denying their claims for payment from the VSST Fund. Section § 20144(b) precludes judicial review of such decisions, and this Court therefore lacks jurisdiction over this lawsuit.[8]

## CONCLUSION

Plaintiffs have suffered unimaginable tragedies at the hands of terrorists. Although Congress empowered the Special Master to compensate certain victims of terrorism through the

---

[7] When determining whether a statute precludes all review of constitutional questions, the D.C. Circuit has said that "not only the words of the statute, but its legislative history" must evince congressional intent to preclude review. Bartlett v. Bowen, 816 F.2d 695, 699 (D.C. Cir. 1987), opinion reinstated on reconsideration sub nom. Bartlett ex rel. Neuman v. Bowen, 824 F.2d 1240 (D.C. Cir. 1987). That is likely because the presumption of judicial review "applies 'in a particularly rigorous fashion[]' . . . when constitutional claims are at stake." Griffith v. FLRA, 842 F.2d 487, 494 (D.C. Cir. 1988) (quoting Bartlett, 816 F.2d at 699). Indeed, the Circuit has since held that statutes preclude review of non-constitutional claims without addressing legislative history. See, e.g., Tex. All., 681 F.3d at 408–09. But if this Court is obligated to assess anything beyond § 20144(b)'s unequivocal text, the Court notes that the statutory scheme reveals that Congress's "intent was that the Fund operate to compensate victims of state-sponsored terrorism efficiently and quickly," as revealed by the statute's "expeditious deadlines for standing up the Fund's operations" and its exemption of "the Fund's procedural rules from lengthy notice-and-comment rulemaking." O'Neill, 2022 WL 17415057, at *7. Moreover, Congress has amended § 20144 in response to "concerns about inequities," but declined to modify § 20144(b)'s bar on judicial review. See id.

[8] In their opposition, plaintiffs argue that this Court has jurisdiction over their claims under the Mandamus Act, 28 U.S.C. § 1361. Opp'n at 28–33. However, plaintiffs' complaint contains no claim under that statute, see Compl. ¶¶ 201–10 (asserting claims only under 34 U.S.C. § 20144 and the APA), and "[i]t is axiomatic that a party may not amend his complaint through an opposition brief," Singh v. District of Columbia, 55 F. Supp.3d 55, 70 (D.D.C. 2014) (internal quotations omitted). Even were the complaint to contain a mandamus claim, this Court would lack jurisdiction over it. Mandamus jurisdiction requires a plaintiff to demonstrate "(1) a clear and indisputable right to relief, (2) that the government official has a clear duty to act, and (3) that no adequate alternative remedy exists." Citizens for Resp. & Ethics in Wash. v. Trump, 924 F.3d 602, 606 (D.C. Cir. 2019) (internal quotation marks omitted). Because § 20144(b) bars this Court from reviewing plaintiffs' claims—and thus from granting them relief—plaintiffs' supposed mandamus claim fails on the first prong. See id. at 608–09.

VSST Fund, it simultaneously expressly precluded courts from reviewing her decisions. Accordingly, the Court grants defendants' motion to dismiss for lack of jurisdiction.  A separate Order shall issue on this date.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated: September 17, 2025